## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LaDONE MALONE                              *

Plaintiff,                                 *

v.                                         *          Civil Action No. ELH-22-2032

DEPARTMENT OF PUBLIC SAFETY AND            *
CORRECTIONAL SERVICES, *et al.*,
                                           *
Defendants.

                                        ***

### MEMORANDUM OPINION

The self-represented plaintiff, LaDone Malone, filed suit pursuant to 42 U.S.C. § 1983 against the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Correctional Officer II Clayton Weaver, and Correctional Officer II Joshua A. Millin, alleging a violation of his constitutional rights stemming from an incident that took place at Roxbury Correctional Institution ("RCI") on July 20, 2020.  ECF 1.  He also filed a supplement to his suit, which includes exhibits.  ECF 6.  Malone's Complaint alleges the use of excessive force, in violation of the Eighth Amendment, and a violation of his substantive and procedural due process rights.  *See* ECF 1 at 2-10.  He seeks a declaratory judgment, injunctive relief, and monetary damages.  *Id.* at 11.

On November 4, 2022 (ECF 23), and again on January 20, 2023, in two submissions, Malone sought leave to amend the Complaint to clarify the claim and to add additional defendants. ECF 23, ECF 34, ECF 35.  Of relevance here, he sought to add as defendants DPSCS Secretary Robert L. Green; RCI Warden Casey Campbell; RCI Assistant Warden Mike Lichtenberg; and

RCI Chief of Security Stacey Taylor.  I denied ECF 23 by Order of November 18, 2022 (ECF 25) but granted the motions to amend on January 30, 2023.  ECF 38.[1]

DPSCS, Officer Weaver, and Officer Millin moved to dismiss or for summary judgment. ECF 29.  Their motion is supported by a memorandum (ECF 29-1) and exhibits, including documents and a video recording.

Following Malone's amendment of the suit, Green, Campbell, Lichtenberg, and Taylor also moved to dismiss or for summary judgment.  ECF 40.  And, that motion is supported by a memorandum of law.  ECF 40-1.

I shall sometimes refer to DPSCS, Weaver, and Millin as the "original defendants" and the four newly added defendants as the "new defendants."  The original defendants and the new defendants are represented by the same attorney from the Office of the Maryland Attorney General. The new defendants incorporate by reference the motion of the original defendants.  *See* ECF 40-1 at 1.  They also cite to the exhibits that were submitted by the original defendants with ECF 29. In addition, the factual summaries in the two motions are virtually identical, and the motions advance similar legal contentions.  Therefore, I shall sometimes refer to defendants' motions collectively as the "Motions".

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed Malone that the failure to file a response in opposition to the Motions could result in dismissal of his Complaint.  ECF 30, ECF 41.  Malone filed a response on May 9, 2023.  ECF 51.  He also filed a combined memorandum with motions, affidavits, and exhibits, totaling about 80 pages.  ECF 51-

---

[1] ECF 23 merely sought to clarify that the claim of misuse of force is based on the Eighth Amendment.  But, that is apparent in ECF 1.

1.  The filing includes a motion for discovery, pursuant to Federal Rule of Civil Procedure 56(d) (ECF 51-1 at 38-41) as well as a motion for appointment of counsel.  ECF 51-1 at 62-66.[2]

Defendants filed a joint reply on June 14, 2023.  ECF 59.  On July 17, 2023, Malone filed a "Motion for Extension of Time," seeking leave to respond to the defendants' reply and attaching a proposed surreply.  ECF 62; ECF 62-2.  I shall grant Malone's Motion for Extension of Time, *nunc pro tunc*, and will direct the Clerk to accept the surreply for filing.  In the surreply, Malone seems to concede that DPSCS is not a proper defendant.  ECF 62-2 at 1-2.  And, he clarifies that the remaining defendants were sued in their individual capacities.  *Id.* at 2-3.

The matter is now ripe for disposition.  Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2023).

For the reasons that follow, as to Officer Weaver and Officer Millin. I shall construe their motion as one for summary judgment and I shall deny their motion.  I shall construe the Motions as to DPSCS, Green, Campbell, Lichtenberg, and Taylor as motions to dismiss and grant them.  But, Malone's claims against Green, Campbell, Lichtenberg, and Taylor will be dismissed, without prejudice.  I shall also deny, without prejudice, Malone's motion for discovery.  And, I shall grant his motion for appointment of counsel.[3]  Officers Weaver and Millin will be directed to Answer the suit.

---

[2] I denied, without prejudice, plaintiff's earlier requests for appointment of counsel and discovery.  *See* ECF 16; ECF 48; *see also* ECF 11, ECF 19.

[3] Under 28 U.S.C. § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

# I.     Factual Background[4]

## A.  Malone's Allegations

Malone alleges that on July 20, 2020, Officers Weaver and Millin were escorting him from the dispensary holding cells to Housing Unit 5 ("HU5") when Officer Millin asked Malone if he liked to threaten people.  ECF 1 at 2-3.  When Malone answered "no," Officer Millin disagreed and instigated an argument with Malone.  *Id.* at 3.  Malone states that he was wearing a COVID mask during this time.  *Id.*  Officer Millin then began yelling and "aggressively yanking, pulling and gripping" Malone's arm, causing Malone to walk unsteadily.  *Id.*

After a few steps, Officer Millan placed Malone in a bar hammer position, with his arm under Malone's handcuffs, his hand near Malone's neck and shoulders, and his elbow pressing down between Malone's shoulder blades.  *Id.*  Malone told Officer Millin that he was in pain, but Officer Millin directed him to stop complaining and keep walking.  *Id.* at 3-4.  Malone started "strengthening [his] arms to stop them from being lifted and hurting."  *Id.* at 4.  Then, Officer Millin yelled and slammed plaintiff face first into the concrete, creating a "huge bloody gash" on his chin and "breaking and shattering three teeth on the left upper and lower side" of his mouth. *Id.*

Officers Weaver and Millin continued to sit on top of Malone with Officer Millin's hand pushing Malone's head "to have [his] chin being dug into the ground."  *Id.*  Another officer arrived and, after two minutes, Malone was transported to the dispensary.  *Id.* at 5.  Officers took pictures of Malone but refused to acknowledge his complaints of having broken teeth.  *Id.*  A nurse came and tended to Malone's chin.  *Id.*  Thirty days later, Malone's three teeth were extracted.  *Id.*

---

[4] All citations reflect their electronic pagination.

Thereafter, Malone was issued a ticket for the incident and was told that if he did not "take the plea," he "would be placed in cell with people who would assault and violate" him. *Id.* at 6. Malone accepted the plea and was placed in punitive segregation for 30 days, followed by nine months in administrative segregation. *Id.* Once he was released to the general population, he was not given an institutional job and was denied access to the law library and legal materials. *Id.* at 6-7.

### B.  Defendants' Motions

Defendants state that at approximately 5:30 p.m. on July 20, 2020, Malone was in the dispensary at the medication window when Nurse Williams asked him for his housing unit assignment. Use of Force Report, ECF 29-3 at 16. Malone responded by saying, "I'm from housing unit three. You don't already know that? You should know where your enemies are, sweetheart." *Id.* When the nurse told Malone that she considered his comment to be a threat, Malone shouted at the nurse. *Id.*

Williams, an LPN, submitted a report on July 20, 2020. ECF 29-3 at 16. She claims that, when she told Malone that she "perceived" his comment as "a threat," Malone responded, in part, *id.*:  "I don't give a fuck . . . ." *See also* ECF 29-3 at 18 (Report of CO II J. Lowers).

Approximately two hours later, at 7:35 p.m., Officers Weaver and Millin were tasked with escorting Malone to HU5 to be placed on disciplinary segregation. ECF 29-3 at 3-7. During the escort, Malone, who was handcuffed behind the back, tried to pull away and stated to Officer Millin, "I have HIV and I am going to spit in your face." *Id.* In light of the verbal threat and Malone's non-compliance, Officers Weaver and Millin placed plaintiff's arms in a bar hammer position and continued the escort to HU5. *Id.*

Malone continued to physically resist the officers and shouted obscenities at them.  *Id.*  In response, Officer Cunningham came for assistance, grabbed Malone's legs, and together with Officers Weaver and Millin, took Malone to the ground to gain control and compliance.  *Id.*  Malone was then taken back to the dispensary, where he continued to shout obscenities at staff.  *Id.*

In support of the Motions, defendants have submitted a video recording purportedly capturing the incident.  ECF 29-7.  The video reflects that an escort is taking place at around 7:35 p.m.  *Id.*  It also shows an inmate being escorted by officers outdoors, through a walkway between buildings.  *Id.*  However, because the camera is located far from the incident being recorded, and because the image is backlit by sunlight, it is difficult to determine how many people are walking, let alone the identities of those individuals.  *Id.*  The prisoner and the officers walk at a steady pace along the walkway and, upon reaching the entrance of the far building, they all collapse to the ground at about 7:37:35 p.m.  *Id.*  At 7:38:30 p.m., at least one more officer exits the far building and comes toward the individuals on the ground.  *Id.*  At 7:39:00 p.m., a transport vehicle arrives, and by 7:39:40 p.m., it drives away with the prisoner on board.  *Id.*

As a result of the use of force incident, Lt. Williams came to the dispensary to investigate the matter.  ECF 29-3 at 11.  Lt. Williams saw Malone, who was "very agitated and screaming," in one of the cells.  *Id.*  After Malone calmed down, Lt. Williams spoke to him and detected the smell of alcohol on his breath.  *Id.*  He noted that Malone appeared to be intoxicated.  *Id.*

Malone informed Lt. Williams that the officers "threw him on the ground for no reason and tried to kill him."  *Id.*  Malone refused medical care and did not provide a written statement of the incident.  *Id.* at 8, 11.  As Lt. Williams was leaving the dispensary, officers informed him that Malone was banging his head and mouth on the glass window in the cell door.  *Id.* at 11.  Lt.

Williams immediately reported to the cell and escorted Malone to the nurse's station for evaluation, because blood was coming from his mouth and chin.  *Id.*

At 7:54 p.m. Nurse Lex attempted to examine Malone but could not do so because he was "acting aggressive."  *Id.* at 12.  Nurse Lex assessed Malone in the holding cell and noted "scant amount of blood to his shirt and chin."  *Id.*  Initially, Malone shouted at the nurse and was banging his head against the cell door.  *Id.*  Once he calmed down, he was brought to the dispensary, where the nurse noted a "chip in his left back upper molar" and a laceration on his chin that was about 4 cm. long.  *Id.*

Nurse Lex noted that Malone was in the "holding cell banging his head on the cell door." *Id.*  She also stated that Malone refused to let her shave his chin.  *Id.*  Thus, gauze was applied to his wound, and he was scheduled to return the following morning for suturing.  *Id.*

Defendants submitted as an exhibit a "Memorandum" from Stacey Taylor, Chief of Security, to the Director of Security Operations, dated July 27, 2020.  ECF 29-3 at 1-2.  It reflects that four staff were involved in the incident in some way:  Weaver, Millin, CO II Cunningham, and L. Mackenziane, R.N.  *Id.* at 1.  The Memorandum concluded that the Use of Force was "taken . . . in accordance with established directives and policies."  *Id.*

Malone was charged with a violation of Rule 104 (making threats to persons or property) and Rule 410 (Insolence, use of vulgar language, disrespect).  ECF 29-3 at 16.

### C.  Malone's Response

In his opposition to the Motions, Malone declares under penalty of perjury that the prisoner being escorted in the video recording is not him.  ECF 51-1 at 12, 31-32.  Specifically, he states that he does not have the same hairstyle and clothing as the individual being escorted in the video, and the person depicted is not wearing a COVID mask.  *Id.*  Malone also avers that only two

officers were escorting him, whereas this video shows three officers on the escort. *Id.* In the response, Malone seems to acknowledge that DPSCS is not a "person" subject to suit under § 1983. *Id.* at 13.

## Standards of Review

### A.

Malone is self-represented. Therefore, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

### B.

The Motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). But, under Rule 12(b)(6), a court, in its discretion, may consider matters outside

of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x 220, 222 (4th Cir. 2016) (per curiam).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 at 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the

grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.   Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).   "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"   *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom, Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).   A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"   *Harrods,* 302 F.3d at 244 (citations omitted).   But, the nonmoving

party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Malone has filed an affidavit under Rule 56(d) seeking the opportunity to depose "witnesses such as prison staff, inmates, and health care providers" regarding the alleged use of excessive force against him.  ECF 51-1 at 40.  But, it is unclear from Malone's pleading as to what information is necessary for his claim.  In any event, because I shall appoint counsel to represent Malone in regard to his excessive force claim, I shall deny his discovery motion, without prejudice.

I am satisfied that it is appropriate to address the motion of Officer Weaver and Officer Millin as one for summary judgment.  In contrast, with regard to defendants DPSCS, Green, Campbell, Lichtenberg, and Taylor, as well as with regard to Malone's due process claim, it is not necessary for me to consider matters outside the pleadings.  Thus, as to them, as well as the due process claim, I shall construe the Motions as ones to dismiss.

## C.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See*

*Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *Kolon Indus., Inc.*, 637 F.3d at 440); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of*

*the complaint.*'"  *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *Kolon Indus., Inc.*., 637 F.3d at 448).  Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger*, 510 F.3d at 450.

However, under limited circumstances, when a court is resolving a Rule 12(b)(6) motion, it may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."  *Goines*, 822 F.3d at 166 (internal citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

"[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."  *Goines*, 822 F. 3d at 167.  "When the plaintiff attaches or incorporates a document upon which his claim is

14

based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Vol. Fire Dep't.*, 684 F.3d at 467. To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "As examples, 'courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'" *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert.*

*denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."   The Court may also "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment."   *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir.); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records").

### D.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   *See Celotex Corp.*, 477 U.S. at 322-24; *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

The Supreme Court has clarified that, under Rule 56(a), not every factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  Thus, to avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute

of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon*, 890 F.3d at 470.

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). In other words, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 525 (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). Indeed, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

Notably, the court must view the evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in his favor, "without weighing the evidence or assessing the

witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Of import, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Kellen v. Lott*, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)). But, if testimony is based on personal knowledge or firsthand

experience, it can be evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x. 209, 212 (4th Cir. 2017). Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, 41 F.4th 370, 383 (4th Cir. 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

On the other hand, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 F. App'x. 285, 294 (4th Cir. 2012). "[T]o avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial. Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to a material fact. *Matsushita Elec.*, 475 U.S. at 585-86. "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Harmoosh*, 848 F.3d at 238.

### III. Discussion

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See,*

*e.g., Nieves v. Bartlett*, ___ U.S. ___, 139 S.Ct. 1715, 1721 (2019); *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).  "The first step in any such claim is to pinpoint the specific right that has been infringed."  *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical."  *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v.*

*Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

In their Motions, defendants argue that: (1) DPSCS is not a "person" subject to suit under § 1983 and is entitled to Eleventh Amendment immunity; (2) claims brought against defendants in their official capacities are barred by the Eleventh Amendment; (3) Malone has not alleged personal participation on the part of defendants Green, Campbell, Lichtenberg, and Taylor, and they cannot be held liable under the doctrine of respondeat superior; (4) Officers Weaver and Millin did not use excessive force against Malone; and (5) defendants are entitled to qualified immunity.  ECF 29-1, ECF 40-1.

A.   **Motion to Dismiss**

1.   **DPSCS**

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State."  States generally enjoy immunity from suit brought in federal court by their own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages unless the state consents or there

is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651 (1974).

Relevant here, sovereign immunity bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," which includes state agencies. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-02 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pense v. Md. Dep't of Pub. Safety & Corr. Servs*., 926 F.3d 97, 100 (4th Cir. 2019); *McCray v. Md. Transit Admin*., 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013).

Generally, § 1983 suits against a State for money damages are barred by the sovereign immunity embodied in the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). However, "[t]he Eleventh Amendment bar to suit is not absolute." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). For example, sovereign immunity does not bar federal enforcement actions. *Passaro v. Virginia*, 935 F.3d 243, 248 (4th Cir. 2019) (citing *Seminole Tribe*, 517 U.S. at 71 n.14).

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state.  In *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . .  Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . .  Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court.  *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

The State of Maryland has not waived sovereign immunity for claims brought pursuant to § 1983.  Nor do the exceptions outlined above apply here.[5]  Accordingly, because DPSCS is a State agency, it is immune from suit and shall be dismissed.

### 2.  Green, Campbell, Lichtenberg, and Taylor

As discussed previously, to establish a claim pursuant to 42 U.S.C. § 1983, the plaintiff must plead facts that, if proven, would establish personal fault based upon a defendant's personal conduct.  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights); *see also Iqbal*, 556 U.S. at 677; *Younger*, 2023 WL 5438173, at *6 n.12.  The Supreme Court explained in *Iqbal*, 556 U.S. at 677, that "a supervisor's mere knowledge" that his subordinates have engaged in unconstitutional

---

[5] Plaintiff seeks injunctive relief, such as a reversal of his "plea deal" and the punishment he received.  ECF 1 at 11.  The request turns on his due process claim.  And, as discussed, *infra*, he does not state a due process claim.  Therefore, despite plaintiff's request for injunctive relief, I am satisfied that, under the doctrine of sovereign immunity, the claims cannot proceed as to DPSCS.

conduct is insufficient to give rise to liability.   Rather, a supervisor is liable for his "own misconduct." *Id.*

In other words, "in order to state a claim for supervisory liability, 'a plaintiff must plead that *each* [supervisory] defendant, through the official's *own individual actions,* has violated the Constitution." *Evans v. Chalmers*, 703 F.3d 636, 660–61 (4th Cir. 2012) (Wilkinson, J., concurring) (quoting *Iqbal*, 556 U.S. at 676) (emphasis and alteration in *Evans*).   Allegations that are "bare assertions," amounting to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" are not sufficient.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 554–55).

Plaintiff has named Green, Campbell, Lichtenberg, and Taylor in his amendment to the Complaint.  But, Malone does not attribute any specific action or inaction to them that resulted in a constitutional violation.  Thus, he fails to state a claim against these defendants.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation).

Moreover, to the extent Malone intends to sue Green, Campbell, Lichtenberg, or Taylor in their capacity as supervisors at RCI, he cannot succeed.  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983).  Rather, liability of supervisory officials is "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

24

To be sure, the Fourth Circuit has stated: "A supervisor can only be held liable for the failings of a subordinate under certain narrow circumstances." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted); *see Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

"A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted). To qualify as "pervasive," a plaintiff must demonstrate that the challenged conduct "is widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799. Therefore, it is insufficient to point "to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373). A supervisor's "continued inaction in the face of documented widespread abuses . . . provides an independent basis" for § 1983 liability against that official for his deliberate indifference or acquiescence to "the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373; *see Shaw*, 13 F.3d at 799.[6]

---

[6] In *Younger*, 2023 WL 5438173, the Fourth Circuit seemed to question the viability of the

25

Malone has failed to plead facts showing supervisory indifference to, or tacit authorization of, any misconduct by RCI employees. And, his assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See id.* ("Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse."). Thus, the suit shall be dismissed as to Green, Campbell, Lichtenberg, and Taylor, without prejudice.

### 3. Due Process Claims

In his Complaint, Malone states that, as a result of the use of force incident, he was issued a disciplinary ticket, forced to accept the plea, was placed in segregation, then denied an institutional job and access to legal materials. ECF 1 at 6-7.

To the extent that Malone alleges that he was denied due process when he was issued a ticket and forced to take a plea, causing him to be placed in segregation, his claim fails. Even if the defendants failed to follow prison directives or regulations regarding this issue, the failure does not, in and of itself, establish a violation of due process. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015).

Where a state has created internal prison procedures, the procedural protections of the Due Process Clause apply only to actions that implicate a protected liberty interest, such as those that result in the loss of good time credits, *see Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993), or otherwise lengthen the amount of time an inmate must serve, *see Montanye v. Haymes*, 427 U.S. 236, 242 (1976), as well as those that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 477-78, 483-84

---

three-factor test in *Shaw*. *Id.* at * 9 n.16. The "simpler question," said the Court, was whether the defendant "himself was deliberately indifferent." *Id.*

(1995). A classification decision or a transfer from one prison facility to another does not ordinarily implicate a protected liberty interest or state a claim under § 1983. *Meachum v. Fano*, 427 U.S. 215, 228 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987).

To the extent that Malone alleges that defendants violated his due process rights in failing to give him a job or to provide access to legal services, his claims fail. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum*, 427 U.S. at 224; *see also Sandin*, 515 U.S. at 493. There is no constitutional entitlement to work assignments or education during incarceration. *See Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (work assignments are within the discretion of prison officials). "Absent a showing of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' prisoners do not have a constitutional right to due process before being denied access to programs or particular housing." *Johnson v. Simmons*, GJH-20-559, 2021 WL 1087059, at *9 (D. Md. Mar. 22, 2021) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Thus, his claim cannot proceed.

With regard to Malone's lack of access to legal materials, a critical requirement of an access-to-courts claim is that a prisoner must show "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Lewis*, 518 U.S. at 352-53 & n.3. The complaint must contain a sufficient description of the predicate claim to permit an

assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Malone has not provided a description of the legal proceeding that was frustrated due to his lack of access to the library and legal materials. Therefore, he has not satisfied the "actual injury" requirement. It follows that his access to courts claim fails.

### B.      Motion for Summary Judgment

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338-39 (4th Cir. 2021).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).

"In assessing a claim of excessive force, courts ask 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" *Lombardo v.*

*City of St. Louis, Missouri*, ___ U.S. ___, 141 S. Ct. 2239, 2241 (2021) (per curiam) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989) (some internal quotation marks omitted)); *see also Kingsley v. Hendrickson*, 576 U.S. 389 (2015).  Notably, "the inquiry 'requires careful attention to the facts and circumstances of each particular case.'"  *Lombardo*, 141 S. Ct. at 221 (quoting *Graham*, 490 U.S. at 396).

An Eighth Amendment deliberate indifference claim is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97–98 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017).  The Fourth Circuit has characterized this standard as an "exacting" one.  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

A prisoner's Eighth Amendment claim of use of excessive force involves both an objective and a subjective component.  *Brooks v. Johnson*, 924 F.3d 104, 112 (2019); *see Younger*, 2023 WL 5438173, at *6; *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021).  The objective component asks whether the plaintiff was exposed to an objectively "substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  But, this "is not a high bar, requiring only something more than '*de minimis*' force."  *Brooks*, 924 F.3d at 112 (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam).  The subjective component asks whether the officer "'acted with a sufficiently culpable state of mind.'"  *Brooks*, 924 F.3d at 112 (citation omitted).  In other words, did the officer recognize the risk but ignore it. *Younger*, 2023 WL 5438173, at *6; *see Moss*, 19 F.4th at 624.  Notably, "this is a demanding standard . . . ."  *Brooks*, 924 F.3d at 112.

The state of mind is one of "'wantonness in the infliction of pain.'"  *Id.* at 112-13 (quoting

*Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008)).  Whether the force used by a prison official was wanton is determined by inquiring if the "'force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Hudson*, 503 U. S. at 6 (citation omitted; some quotation marks omitted).  Several factors are pertinent.  The court must consider the need for the application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made by prison officials to temper the severity of their response.  *Lombardo*, 141 S. Ct. at 2241; *Kingsley*, 576 U.S. at 397; *Whitley*, 475 U.S. at 321.

To illustrate, in *Porter v. Clarke*, 923 F.3d 348, 357 (4th Cir. 2019), the Court concluded that, under certain circumstances, "solitary confinement poses an objective risk of serious psychological and emotional harm to inmates, and therefore can violate the Eighth Amendment." However, the Court clarified that "legitimate penological justification can support prolonged detention of an inmate in segregated or solitary confinement, . . . even though such conditions create an objective risk of serious emotional and psychological harm." *Id.* at 362–63.  "Put simply, prison officials tasked with the difficult task of operating a detention center may reasonably determine that prolonged solitary detention of the inmate is necessary to protect the well-being of prison employees, inmates, and the public or to serve some other legitimate penological objective." *Id.* at 363 (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012)).

On the one hand, it is "[w]ithout question" that "'maintaining safety and order at [a detention center] requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Porter*, 923 F.3d at 386 (alterations in *Porter*) (quoting *Florence*, 556 U.S. at 362).  But, a court must also recognize that

30

one of the "'essential principle[s]' protected by the Eighth Amendment is that 'the State must respect the human attributes'" of the inmates in their care. *Porter*, 923 F.3d at 380 (alteration in *Porter*) (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)).

A corrections officer acts in a "'good faith effort to maintain or restore discipline,'" *i.e.*, with "a permissible motive," when confronting "immediate risks to physical safety" and when attempting to "'preserve internal order' by compelling compliance with prison rules and procedures." *Brooks*, 924 F.3d at 113 (quoting *Hudson*, 503 U.S. at 6-7). In contrast, the use of force "to punish an inmate for intransigence or to retaliate for insubordination" would "cross the line into an impermissible motive." *Brooks*, 924 F.3d at 113.

The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins*, 559 U.S. at 38; *see Ussery v. Mansfield*, 786 F.3d 332, 336 (4th Cir. 2015). Rather, the extent of injury is one factor indicative of whether the force was necessary in a particular situation. But, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner "had the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

Construing the facts here in the light most favorable to Malone, it seems that while being escorted from the dispensary to HU5, Malone was placed in a bar hammer position and directed to continue walking. ECF 1 at 2-3; ECF 29-3 at 3-7. The parties all agree that Malone was not walking properly. *See id.* Malone states that he had trouble walking because of the painful pressure applied by the officer, while defendants assert that plaintiff was being noncompliant with their orders. ECF 1 at 4; ECF 29-3 at 3-7. In any event, it is clear that Malone was taken to the ground as a result. Moreover, he claims to have suffered a lacerated chin that required stitches as well as three broken teeth that were eventually extracted. *See* ECF 6 at 18-26.

Defendants appear to suggest that Malone's injuries may have been self-inflicted, as he was seen banging his head on the cell while waiting for the nurse.  ECF 29-3 at 11.  From the exhibits, however, the timeline of events that followed the use of force is unclear.  Although it is undisputed that RCI staff took photos of Malone, Lt. Williams spoke to him, and the nurse evaluated his injuries, I cannot ascertain the order in which these events look place.  *See generally* ECF 29-3.  Thus, a dispute of fact exists as to  whether Malone's injuries were present immediately after the use of force or only after he was seen banging his head on the cell.

If, in fact, Malone suffered a lacerated chin and three broken teeth as a result of the actions of Officer Weaver and Millin, the amount of force used by the officers would seem unreasonable, given that there were two or three escorts present, Malone was handcuffed, and his threat of spitting was impeded if, as he claims, he was wearing a COVID mask.  *Cf. Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (upholding denial of motion for summary judgment on qualified immunity for excessive force claim where officer pinned plaintiff to the ground after she resisted arrest and pushed plaintiff's face into the pavement, cracking three of her teeth, cutting her nose, and bruising her face); *see also Thompson*, 878 F.3d at 101 (citing *Hudson*, 503 U.S. at 9–10 (force not de minimis when sufficient to cause bruising, swelling, loosened teeth)).

Furthermore, although the defendants have submitted video evidence, Malone has stated under the penalty of perjury that he is not the prisoner being escorted in the video.  ECF 51 at 12, 31-32.  Defendants filed a reply, yet they did not address this allegation.  *See* ECF 59.   And, this is not an issue for the Court to resolve.  Rather, it is one for the factfinder.

Nonetheless, defendants assert that they are entitled to qualified immunity.  But, they provide only generic statements of the principles of qualified immunity and offer no substantive analysis of this issue.

"Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Government Services, Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018)) (cleaned up); *see Rivas-Villegas v. Cortesluna*, 595 U.S. ___, 142 S. Ct. 4 (2021) (per curiam); *City of Tahlequah Okla. v. Bond*, 595 U.S. ___, 142 S. Ct. 9 (2021) (per curiam); *Taylor v. Riojas*, ___ U.S. ___, 141 S. Ct. 52, 53 (2020); *Hulbert v. Pope*, 70 F. 4th 726, 732 (4th Cir. 2023); *Franklin v. City of Charlotte*, 64 F.4th 419, 530, 534-35 (4th Cir. 2023); *Hicks v. Ferreyra*, 64 F.4th 156, 169 (4th Cir. 2023); *Davison v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021); *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021); *Humbert v. Mayor and City Council of Balt.*, 866 F.3d 546, 555 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 2602 (2018); *Osborne v. Georgiades*, 679 F. App'x. 234, 237 (4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016); *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015).

As the Fourth Circuit recently reiterated, "'[q]ualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Garrett v. Clarke*, ___ F.4th ___, 2023 WL 4713754 at *___ (4th Cir. July 25, 2023) (quoting *Davison*, 19 F.4th at 640); *see also King v. Riley*, ___ F.4th ___, 2023 WL 4982353, at *3 (4th Cir. Aug. 4, 2023); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 395 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015).

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

An official who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. Rather, the doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see Hicks*, 64 F.4th at 169; *Barrett*, 975 F.3d at 428-29; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018); *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Countless cases support these principles. *See, e.g., Wesby*, 137 S. Ct. at 589; *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Saucier*, 533 U.S. at 206; *Robertson v. Anderson Mill Elem. School*, 989 F.3d 282, 288 (4th Cir. 2021); *Ray v. Roane*, 948 F.3d 222, 229-30 (4th Cir. 2020); *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019); *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019); *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018); *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *Spivey v. Norris*, 731 F. App'x. 171, 175 (4th Cir. 2018); *O'Neal v. Rollyson*, 729 F. App'x. 254, 255 (4th Cir. 2018) (per curiam); *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582-83 (4th Cir. 2017); *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013); *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *Merchant*, 677 F.3d at 661.

Qualified immunity is an affirmative defense. *Hicks*, 64 F.4th at 169; *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 305 (4th Cir. 2006). But, it does not merely provide a defense to liability. Rather, it provides "*immunity from* suit . . . ." *Mitchell v. Forsyth*, 472 U.S.

511, 526 (1985) (emphasis in *Mitchell*); *see Gilliam v. Sealey*, 932 F.3d 216, 229 (4th Cir. 2019),

*cert. denied,* ___U.S.___, 140 S.Ct. 2641 (2020)*; see also Ussery v. Mansfield*, 786 F.3d 332, 337

(4th Cir. 2015). Accordingly, the immunity is "'effectively lost if a case is erroneously permitted

to go to trial.'" *Id.* (quoting *Mitchell*, 472 U.S. at 526).

To analyze whether qualified immunity applies, courts generally employ a two-step

inquiry. *King*, 2023 WL 4982353, at *3; *Hicks*, 64 F.4th at 169. They are: (1) whether the facts

alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the

[official's] conduct violated a constitutional [or statutory] right," *Saucier v. Katz*, 533 U.S. 194,

201 (2001); and (2) whether the right at issue "'was clearly established in the specific context of

the case—that is, [whether] it was clear to a reasonable [official] that the conduct in which he

allegedly engaged was unlawful in the situation he confronted.'" *Merchant v. Bauer*, 677 F.3d 656,

662 (4th Cir. 2012), *cert. denied*, 568 U.S. 1068 (2012) (quoting *Figg v. Schroeder*, 312 F.3d 625,

635 (4th Cir. 2002)); *see also Cannon v. Village of Bald Head Island*, 891 F.3d 489, 497 (4th Cir.

2018); *Scinto*, 841 F.3d at 235. "'Courts are no longer required to analyze these questions

sequentially, but it is often the better approach' to 'determine first whether the plaintiff has alleged

a deprivation of a constitutional right at all.'" *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 178 (4th

Cir. 2018) (internal citation omitted).

"The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional

violation occurred . . . . [and] [t]he defendant bears the burden of proof on the second question—

*i.e.*, entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007)

(internal citations omitted); *see also Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). In other

words, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of

his discretionary authority is not entitled to claim qualified immunity,' the defendant bears the

35

initial burden 'of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Purnell,* 501 F.3d at 377 n.2 (citation omitted).

Notably, a "question of material fact" as to whether "'the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (citation omitted).  A dispute of material fact is not appropriate for resolution, either at the motion to dismiss stage or on summary judgment.

As indicated, if an official is shown to have violated the rights of a plaintiff, the court must "evaluate whether the right at issue was 'clearly established' at the time of the [official's] conduct." *Wilson*, 893 F.3d at 219. This is a question of law for the court to resolve. *Ray*, 948 F.3d at 228; *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

"The inquiry into whether a constitutional right is 'clearly established' requires defining the right at issue." *Hicks*, 64 F.4th at 170; *see Pfaller v. Annonette*, 55 F.4th 436, 445 (4th Cir. 2022); *Halcomb*, 992 F.3d at 319-20.  "The Supreme Court has cautioned against defining a right with 'a high level of generality'. . . ." *Hicks*, 64 F.4th at 170 (citing *Kisela v. Hughes*, ___ U.S. ___, 138 S.Ct. 1148, 1152 (2018)); *see City of Escondido v. Emmons*, ___ U.S. ___, 139 S. Ct. 500, 503 (2019).  Rather, the court must "define the right at issue with specificity." *Knibbs v. Momphard*, 30 F.4th 200, 223 (4th Cir. 2022).

"'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted); *see King*, 2023 WL 4982353, at *3. Put another way, the "clearly established" standard "requires that the contours of the legal rule be 'so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Garrett* , 2023 WL 4713754, at *3 (quoting *City of Tahlequah*, 142 S. Ct. at 11

36

(internal quotation marks omitted). And, "existing precedent must have placed the statutory or constitutional question beyond debate." *Tarashuk v. Givens*, 53 F.4th 154, 162 (4th Cir. 2022) (integral quotation and citation omitted); *see King*, 2023 WL 4082353, at *3.

The Court is guided by cases from the Supreme Court, the Fourth Circuit, and "the highest court of the state in which the action arose." *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017). In the absence of controlling authority, the Court considers "whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Id.* (internal quotation marks omitted). And, "even when the facts in the record establish that the [official's] conduct violated a plaintiff's constitutional rights, the [official] still is entitled to immunity from suit 'if a reasonable person in the [official's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)); *see also Williams v. Strickland*, 917 F.3d 763, 768 (4th Cir. 2019); *Greene v. Feaster*, 733 F. App'x. 80, 82 (4th Cir. 2018) (per curiam) ("Even when a prison official [is shown to have violated a constitutional right of a plaintiff], qualified immunity will shield him from liability as long as his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Goines v. Community Services Board*, 822 F.3d 159, 170 (2016)).

However, "[t]here is no requirement that the 'very action in question [must have] previously been held unlawful' for a reasonable official to have notice that his conduct violated that right." *Scinto*, 841 F.3d at 236 (second alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Government officials "can still be on notice that their conduct violates established law even in novel factual circumstances, so long as the law provided fair warning that their conduct was wrongful." *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 418 (4th Cir.

2020) (internal quotation marks omitted); *see also Hope*, 536 U.S. at 741 (concluding that cases involving "fundamentally" or "materially similar" facts are not necessary to a finding that the law is clearly established).

Indeed, the second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19.

It is well established that "[i]n its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." *Farmer*, 511 U.S. at 832 (quoting *Hudson*, 503 U.S. 1). Notably, in the context of the Eighth Amendment, an official who was deliberately indifferent "could not also believe 'that [their] actions comported with clearly established law.'" *Pfaller*, 55 F.4th at 446; *see Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022). Therefore, the Fourth Circuit has "'effectively collapse[d]' qualified immunity's two inquiries into one, holding that dismissal on qualified-immunity grounds 'remains improper so long as the officer's mental state remains genuinely in issue.'" *Pfaller*, 55 F.4th at 446 (quoting *Thorpe*, 37 F.4th at 934); *see also Younger*, 2023 WL 5438173, at *9 n.17 (recognizing that the Court has "effectively done away with the clearly established prong of qualified immunity for a subset of deliberate indifference cases").

Here, if in fact Malone suffered a lacerated chin and three broken teeth as a result of the actions of Officer Weaver and/or Officer Millin, the amount of force used by the officers would seem unreasonable, given that there were two or three escorts present, Malone was handcuffed and in a bar hammer position, and his threat of spitting was allegedly impeded by his COVID mask. *Cf. Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (upholding denial of motion for summary judgment on qualified immunity for excessive force claim where officer pinned plaintiff to the ground after she resisted arrest and pushed plaintiff's face into the pavement, cracking three of her teeth, cutting her nose, and bruising her face); *see also Thompson*, 878 F.3d at 101 (citing *Hudson*, 503 U.S. at 9–10 (force not de minimis when sufficient to cause bruising, swelling, loosened teeth)).

Officers Weaver and Millin have added no evidence to the record that would allow for resolution of the parties' factual dispute.  Rather, they present a boilerplate qualified immunity argument, without application of the law to the facts.

Where, as here, a plaintiff has '"made a showing sufficient to' demonstrate an intentional violation of the Eighth Amendment, 'they have also made a showing sufficient to overcome any claim to qualified immunity.'" *Thorpe*, 37 F.4th at 934 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n. 15 (3d Cir. 2001)).

Whether such a violation actually occurred is a different question.  There are genuine issues of material fact that warrant denial of the motion of Officer Weaver and Officer Millin and which would also preclude the grant of qualified immunity at this time.  Notably, a "question of material fact" as to whether "'the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'"  *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (citation omitted). A dispute of material fact is not appropriate for resolution on summary judgment.

## V.  Conclusion

I shall deny the motion of Officer Weaver and Officer Millin, construed as one for summary judgment.  I shall construe the Motions as ones to dismiss with respect to DPSCS, Green, Campbell, Lichtenberg, and Taylor, and grant them.  But, the claims against Green, Campbell, Lichtenberg, and Taylor will otherwise be dismissed, without prejudice, and with leave to amend within 45 days following the appointment of pro bono counsel.

Malone's Rule 56(d) Motion shall be denied, without prejudice, and his Motion for Extension of Time shall be granted, *nunc pro tunc*.  Malone's Motion for Appointment of Counsel shall be granted.  And, Officers Weaver and Millin will be directed to Answer the Complaint.

A separate Order follows.


<u>September 5, 2023</u>                          _____/s/_____
Date                                                           Ellen L. Hollander
                                                                   United States District Judge